District Court Denied Following Trial, Following the Rulings on the Post-Trial Motions The Court denied Pevig's motion to amend its counterclaims, which early in the case had been bifurcated from the original claims brought by Kemin. And then the Court, after it denied the motion to amend, then granted Kemin's motion to dismiss the original counterclaims, if you will, the unamended counterclaims. So, our contention here, the issue really before this Court, I would suggest, is the denial of the motion to amend. Because that's, you know, the motion to dismiss the original counterclaims is fairly moved because our amendment modified or pretty much eliminated most of those original, the factual basis of most of those original counterclaims. The District Court denied Pevig's motion to amend the counterclaims. Just real quickly, as a matter of bookkeeping here. In your reply brief, you say that you are appealing amended counterclaims 3, 4, and 7, but not appealing 5 and 6. That's not, those aren't right numbers, are they? 4 and 6 are wrong. Is that what it says? 4 and 6 are wrong. Okay, well, I spent some time struggling over that and trying to square it with the rest of it. I think we got the I on the wrong side of the piece. I think so. It happens actually a few times in the brief. My apologies. All right, well, I'm clear now. I think it's clear enough from the rest of the material. And let me just at the outset say, amended counterclaims 4 and 5, and we've said this in our brief, we concede our contingent upon this Court's ruling on whether or not the 714 is enforceable or not. If the Court affirms the District Court's findings, if the District Court's determination that the 714 is enforceable, we concede that the counterclaims on 4 and 5 should have been dismissed and that they would have been barred by the law of the case. But that is not the case for counterclaims 3, 6, and 7. They are not dependent on any finding from the patent portion of the case, if you will. The District Court found and denied the motion to amend on two grounds. One was undue delay and prejudice, and the other was futility. And in the District Court's order, he said undue delay and prejudice, comma, futility, or both. Let me first briefly address the undue delay and prejudice issue. They have to be considered together, which the District Court properly recognized. Eighth Circuit law controls this kind of analysis. A motion to amend cannot be denied for undue delay unless there's prejudice. That's Eighth Circuit law. Undue delay alone is not a reason. But the only prejudice here that the District Court found was that, first of all, this Court's decision in Senzagel does not allow patent misuse to be an element of a counterclaim, an antitrust counterclaim, which is how we have it here. The District Court incorrectly found that Senzagel says that patent misuse can only be an affirmative defense to the patent cases. Second of all, the District Court's other finding of prejudice was that PVIC had already raised patent misuse and false marking, which are essentially counterclaims, 6 and 7, in the patent portion of the case and specifically at summary judgment. Senzagel, as I just mentioned, does not stand for the proposition that patent misuse must be and can only be an affirmative defense to a patent case. This Court clearly said it can also be an element in an antitrust counterclaim. The Court's finding of prejudice on that regard was a misstatement of law and therefore an abuse of discretion. Second, PVIC never raised patent misuse or false marking at any point in the patent portion of the case, and we certainly never raised it at summary judgment. We note in our brief that it's hard to prove a negative. You've got to essentially read through all the summary judgment to realize that it's not there. But interestingly, Your Honor, in Kemen's reply brief on this appeal after we filed our response and said all this, they don't make any attempt to point out to the Court where in the summary judgment or the patent portion of the case that we raised this. Therefore, the District Court committed a clear error of fact, and that also is an abuse of discretion. Those are the sole basis of prejudice. Without those, you cannot have undue delay alone, and that basis for the Court's denial of the motion to amend should be reversed. The next issue, then, of course, is futility. Go ahead. Futility is reviewed by this Court for abuse of discretion unless the basis of futility is failure to state a claim upon which relief may be granted. In this case, as I already mentioned, counterclaims, amended counterclaims 4 and 5, we concede depend on the Court's ruling on the 714 enforceability. Counterclaims 3, 6, and 7, however, do not, and the District Court found different reasons why those amended counterclaims were futile. With respect to counterclaim 3, which is an unfair competition claim, the District Court said that Pevig did not plea all the elements of an unfair competition claim. And the Court has before it the amended counterclaim. The Court has the law we laid out in our response brief, a side-by-side of the requirements under the law versus the pleading. But the bottom line is that our contention on this appeal is that our pleading meets the requirements of Federal Rule 8A. That is, it's a short and plain statement of the claim showing entitlement to relief that gives the defendant fair notice of the claims. Also, Eighth Circuit law is clear. Plaintiffs do not need to state each element of a cause of action in its claim. And we've got the site of the milk driver's case in our case. It's just clear. The District Court's finding of futility based on failure to state a claim of counterclaim 3 was, is reviewed by this Court de novo and should be reversed. With respect to counterclaims 6 and 7. If I understand the false representations part of your unfair competition claim, it is that after the claim construction point in the trial, there were continuing false representations with respect to infringement at a point at which the defendant should have known that there could not be infringement. Is that a fair statement? It is a fair statement, Your Honor. Now, did you have or offer to the Court any evidence that there were continuing representations after the Markman determination to potential customers? Actually, the representation had more to do with post-trial, Your Honor, and it had to do with our allegation that Kamin was representing to the industry that the trial court findings were that PBIG had infringed both the 564 and that PBIG's modified process, which does not use propylene glycol, which the 564 claim construction requires, which Kamin has admitted in its arguments in the District Court requires the use of propylene glycol, that they were out telling the world that our process that does not use propylene glycol was found to be infringing by the jury. That's the factual basis. To answer your question about whether or not we presented any evidence, no, we never got the chance. We moved to amend, and the Court denied the motion to amend, and we never got into that. There is law, not in the Eighth Circuit, as far as I can tell, but in other circuits, that suggests that when you're in the motion to amend state of a case, it isn't sufficient simply to state a claim that would survive a motion to dismiss or failure to state a claim, but a court has the discretion to dismiss on a ground that, for example, a summary judgment could not sufficiently be withstood. So if those cases are applicable here, it would have been legitimate, I suppose, for the court to look at the record and ask whether, on the basis of the record, you had introduced anything sufficient to withstand a summary judgment motion. I'm not sure whether or not that's the case in the Eighth Circuit, but I can tell you that that wasn't the basis of the district court's determination here. If it is the law in the Eighth Circuit, your statement about the judge having that discretion would absolutely be true, but he didn't do that. Well, I'm not suggesting that there is an Eighth Circuit case. There are other circuit cases, but so far as I can see, not an Eighth Circuit case. It's just my question is really if that standard is applied. And I guess your answer is that, well, whether it's applicable or not, it wasn't applied in this case and therefore shouldn't be held against you. That's our position, Your Honor. Yes. The patent misuse, the basis for the findings of futility on patent misuse and false market wealth, I use patent misuse as a shorthand. It's an antitrust counterclaim, counterclaim six. It's not a shorthand. It's different. You're right, which is why it occurred to me I need to clarify it. So our antitrust counterclaim six and then our false marketing counterclaim seven, the court found that they were futile because they were misplaced, that's the court's word, as counterclaims because of their, quote, relation to the patent issues already decided, end quote. The court's order, it's hard to kind of pull the specifics out of the order, but the court generally tends to agree with Kamin's arguments on this, which are, and I see them in my rebuttal time, which are that, again, he relied on Senzigel to say that patent misuse cannot be the basis of a counterclaim, even an antitrust counterclaim. That's the sole basis of futility on counterclaim six. On counterclaim seven, he simply says that the false marking is too related to the original patent claims, and it should have been brought as part of the original case. Let me add as a closing comment here, and then I'll reserve the remainder of my time, that even if we had, even if the antitrust claim for patent misuse and the false marking had been brought with the original patent claim, we had bifurcated all the discovery on damages, we had bifurcated, for the counterclaim, we had bifurcated all the discovery for the expert witnesses for the antitrust claims. We couldn't have brought those claims in the first case without having to go back and completely redo the bifurcation order. I'd like to reserve the balance of my time. Okay. Thank you, Mr. D. Ms. Nova? Thank you, Your Honor. The issue before the court here is the denial of a motion to amend the counterclaims. Now, this court should affirm the district court's denial of the motion to amend the counterclaims because there was no abuse of discretion on the part of the district court in denying that motion, in view of the facts of what had happened in this case. And these were set forth in our red brief starting at page 12, where the motion to amend for leave to amend under Rule 15 was made two years after the disclose, after the scheduling order cutoff date for leave to amend. Now, we have to also look at Rule 16b. When there's a scheduling order in place, then the district court is empowered to manage his own docket. He put a scheduling order in place, and once that scheduling order's in place, PIVG doesn't comply with that scheduling order. Then PIVG had the requirement to come forward with good cause or to show good cause that there should be a change to the scheduling order and that they should be granted leave to amend. They did not. There's no evidence in this record whatsoever of good cause to allow the amendment. To clarify the point that was raised by your opposing counsel, and if you could just, this is just a yes or no question, the sentence in the trial court's opinion, despite PIVG's statements to the contrary, PIVG did in fact make these arguments during the patent phase of the action. Would you agree that's incorrect? It is incorrect. Okay. That is incorrect. That's fine. But it's not as positive. I understand. I just wanted to clear the air on that one. So the finding that was made by the district court is that A83 of the appendix, the motion is either untimely and prejudicial, comma, feudal, or both. So the whole amendment under the district court's analysis was, and as followed in the district court's decision, Kemen opposed the amendment on two bases. One, that it was untimely and prejudicial, and two, as a second basis, a different independent alternative basis, that the counterclaims were feudal. So the district court did in fact find that all of the counterclaims, the motion for leave to amend all the counterclaims, was untimely and prejudicial to Kemen. And he was correct, and there's no clear error in any of the factual findings supporting that, when, as I said, the time, two years had passed when allowance for motions to amend the pleadings had passed. It's been over one year since the close of discovery, and the antitrust discovery and the patent discovery was not bifurcated, except for as to expert discovery. So the fact discovery continued. And last, in the midst of pending dispositive motions, and in view of the admission by PIVX counsel that they had just been tied up with the patent case and didn't do anything, they did nothing with respect to the bifurcated claims. But with respect to what the district court actually found, and here the pertinence of the district court's erroneous statement may have some bearing. When the district court gets to the point in its opinion in which it says that these same arguments, that is, timeliness and prejudicial nature, this is on, well, addendum 30. I think it's a different page in the joint appendix if you're using that. But in any event, the court says these same arguments also apply to a lesser extent to PIVX's proposed new counterclaims, despite PIVX's statements to the contrary, and that's the incorrect statement. That appears to be the ground on which the court predicates its finding with respect to timeliness and prejudicial nature. No, the court independently found, Your Honor, that with respect to the patent misuse and the false marking claims, that those were untimely and prejudicial because the patent case had already gone to judgment. I mean, the difference that we keep arguing about with PIVX over the sense of jail case is a very significant one. And PIVX in its arguments always truncates and crops the quote out of the case and just simply says, Oh, patent misuse can be an element of an antitrust violation. The facts of the situation here are very different. There was no final judgment in sense of jail when the court allowed the amendment of the counterclaim. Here, there was a 54B judgment that was final for all purposes with respect to the patent claims. So we have a different situation in this case than it was in sense of jail. Sense of jail did not have a final patent judgment in place as we do here. But to the extent on that point, to the extent that your argument is that the failure to raise patent misuse and the connection with the patent part of the case is res judicata as to the right to raise the patent misuse ingredient of the antitrust claim, which I understand to be your claim, correct? That's correct, Your Honor. But doesn't the Mercoid decision cited in the reply brief from the Supreme Court suggest the contrary? No, Your Honor. Not when there's a situation like this where there is a judgment that's been entered as to the patent part of the case. Now, the other part that's different here is because the defendants asked for a declaratory judgment that the patent was enforceable or unenforceable, excuse me. So there was a declaratory judgment claim pending asking that the patent be declared enforceable. Now, in that situation, they could have and should have raised this patent misuse issue to the extent that there was any patent misuse and the false marking in that sense because those were clearly patent issues that had been bifurcated for purposes of the patent case. So it certainly wasn't erroneous for the district court or it certainly wasn't abuse of discretion for the district court to not allow them to now come bring in these new issues after there's already a final judgment on the patent misuse. Do you have any authority for the proposition that failure to raise patent misuse as a defense in a first litigation bars its being asserted as the basis for an antitrust claim? One second, Your Honor. Well, that's right. Maybe you can... I think there's no binding precedent on this issue. Is there anything out there other than, well, to the extent that Mercoid is suggestive? Yeah, nothing other than that, Your Honor, that we're aware of. And the Mercoid has been severely, I mean, has been limited in some respects to the facts of that particular situation. And I think when you look at the holding of SensaGel as a whole... What cases limit Mercoid, just for my clarification? All right. Eon Laboratories, Inc. It's E-O-N. Okay, yeah. And the site on that? And the site on that one is 298 F. Sub. 2nd. 175. And we have Intercom, which is 909 F. Sub. 465. And then we have an article in Wright & Miller as well. Thank you. So what we have here is a situation where the district court, in looking at his case management and running his case, has come to the conclusion that it wasn't appropriate, and rightly so, to allow PIVG to bring in whole new counterclaims. And so he denied the amendment, and rightly denied the amendment, and that's not an abuse of discretion, and then goes back to the original pending counterclaims and dismissed those because PIVG never attempted to even defend the original counterclaims. When this issue came up and there was a motion to dismiss the original counterclaims, PIVG said, oh no, we're going to move to amend. So there really was no defense of the original counterclaims in the court below. What's happening on this appeal is that PIVG is launching into arguing the merits of its counterclaims in the amended counterclaim and advancing arguments that it never even advanced below in trying to get these counterclaims into the case, but the district court properly denied them in this instance. In looking at the futility issue, what is the right standard in the Eighth Circuit, do you think, as to what a trial judge should look to with respect to whether the futility has been established by the non-moving party and the party not seeking to amend? I think your point was well taken about once the case has progressed along to a certain point, it's not just like on a Rule 12b motion that the standards of the court has to look at that. But when the court took a look at the overall elements of what was trying to be incorporated here, the district court could on this record find that it was insufficient, that the arguments were going to be futile based on some of this court's own precedent, for example. One of the allegations was that there's an antitrust violation because Kennan had entered into trademark licenses. And that's not being pressed anymore, I don't think, right? No, that's the counterclaims they didn't defend at the beginning. Right, right. As I understand, there are really only two continuing issues and they go through all three of the counterclaims that are at issue. One is the marking issue and the other is the, for lack of a better term, the alluding to the patent protection with respect to third parties. And with respect to that, the district court did, especially on the marking issue, the district court made an express finding that it would be untimely and prejudicial to Kennan. There was an express finding by the district court in the decision, so that's just not... Are you referring again to the same section that we talked about earlier, Addendum 30, that these same arguments also apply in the sentence? Correct. Yeah. But that's the point at which the district court then immediately explains that statement by saying that Pivig made those arguments at an early stage, which we agreed is wrong. Correct. So it seems to me that cuts some of the support out from under that statement. Well, I think, but it goes on further in the analysis, and let me get the actual... Well, the next sentence says that it's untimely and prejudicial to come into grant Pivig another opportunity to make these arguments, which, of course, is predicated on the notion it's already made them. And then that sentence, that ends the paragraph. And this is Addendum page 30, Your Honor? Yes. The bottom of the page, starting these same arguments, it's the three-sentence paragraph that kicks over onto Addendum 31. That's right. The last two sentences, which presumably are the explanation for the first, don't seem to hold water. Well, I think it's a district court opinion decision. As you can tell, there's different things in different parts. And just, like, with respect to the motion to amend, I mean, all the motion is denied as untimely and prejudicial earlier in the decision. And then he parses out the counterclaims in the middle part of the decision, and at the conclusion, at the very end of the conclusion of the opinion, he says that the counterclaims were futile. So as the analysis goes on, he starts to, you know, he's made the finding, he confirmed the finding that it's untimely and prejudicial, and then at the end he says it's either untimely and prejudicial, futile, or both. So it runs through the district court opinion that it's not just being denied on the basis of futility. Right. Okay. Thank you, Your Honor. Okay. Thank you, Ms. Yeller. Mr. D. Thank you, Your Honor. With the concession from Kemen that the court made an error in referring to the fact that we had previously argued patent misuse and false marking, we're left with a single basis of prejudice from the district court for its finding of undue delay in prejudice, which is its misreading in the Sessions Jail case. The reason for the bifurcation in the first place, at the beginning of the lawsuit, which was the product of Kemen's motion to bifurcate, was Kemen's argument that the counterclaims, the original counterclaims, involved events after the 714 was granted, and then therefore there was a lack of common issues with the patent claims. That's at page 1186 of the appendix. I suggest to the court that that's still the case. The amended counterclaims all deal with events after the 714 was granted, and frankly one of them, as Judge Bryson alluded to a moment ago, deals with something that's after the trial, which could not obviously have been amended or added as a counterclaim any earlier than, I suppose, the day we got the jury verdict. But that's what these counterclaims relate to, and I would suggest that the same logic that was applied to the bifurcation at the beginning, that the counterclaims deal with issues after the 714 and the uncommon issues of fact, still apply now. And that goes to the issue of the district court's finding that the antitrust claim related to patent misuse and the false marking allegations all should have been brought with the original patent related claims. Which precisely are the post-trial matters that could not have been brought in the beginning? We have made an allegation, Your Honor, in these amended counterclaims, that following the trial, Kemen was advertising and publicizing to the industry, customers and competitors alike, that the jury verdict in this case was that PVIG's current process that does not use propylene glycol was found to be infringing. We'd like an opportunity to litigate that and have our day in court on that issue. But that is an issue that obviously we could not have known about until, not even after the jury, we couldn't have known about that on the day of the jury verdict because we had to find out about it later from our clients. It might not even have been an appropriate amendment. I'm sorry, Your Honor? It would not have related back, I wouldn't think. No, it couldn't relate back. No, it's... I mean, there was obviously... We couldn't have brought an allegation a year before the events that are the factual basis of the allegation. What I'm suggesting is that it's not... It would not have been an appropriate amendment because it couldn't relate back. So there's another reason to deny it. Could it be inappropriate because it didn't relate back? Oh, to the original counterclaims? Yes. A new case altogether. Well, you know, what we have here, and this allows me to address the Senzagel comment that Ms. Knoll made, and that is the Senzagel had not had a final judgment entered from the patent-related portion of the case when, at the time, the case made it to this court. But our position is that that is a distinction without a difference. We had a bifurcated... We had bifurcated claims. We had bifurcated discovery. We had bifurcated on experts and damages. We were, at the time that these motions were filed, we had been ordered by the district court to contact the magistrate judge to set up a new scheduling order. There would have been no continuances here. There would have been no extensions of any deadlines. We still had damages and expert discovery that had to take place. We still had to deal with all those motions related to... We would have had summary judgment motions on the bifurcated counterclaims going down the road. But, Judge, I think Judge Mayer's question is a good one that puzzled me, and I didn't see the parties allude to this at all, but why isn't it a problem for you that the facts and circumstances on which you're relying in the amended counterclaim were not facts and circumstances in existence at the time the action began? The facts and circumstances... Why isn't this the grist for a new case rather than for an amendment of the claims in the initial case? Well, my response to that would be that Kemin's conduct and how it was... In our allegation that it had mismarked and was improperly advertising the 714 products, it goes hand-in-hand with its advertising and mismarking with the 564, and that's because all of their products are marked with both patents. And so we're talking about two separate patents, but we're talking about a set of commercial products that they claim are covered by both patents. So the facts and the events and the circumstances greatly overlap to the point that, in our opinion, it wouldn't make sense to necessarily have a whole separate trial where we'd be dealing with a lot of the same activities, discovery, witnesses, and all of that. Okay. Okay. Thank you, Mr. Deese. Thank you, Ms. Knoll. Both cases are under submission.